### THE DORA ALLISON.

#### (District Court, S. D. Alabama, S. D. March 18, 1914.)

#### No. 1444.

1. COLLISION (§ 96*)—VESSEL OBSTRUCTING ENTRANCE TO SLIP—NEGLIGENCE OF PILOT.

A schooner, which lay with bowsprit and jibboom projecting across the mouth of a slip some 30 or 40 feet, *held* improperly moored and liable for a collision in which another vessel coming out of the slip was injured; the pilot of the latter vessel also *held* in fault for failing to exercise the care and skill required of him.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 203–205; Dec. Dig. § 96.*]

2. PILOTS (§ 15*)—DEGREE OF SKILL AND CARE REQUIRED. -

The care and skill required of a pilot is the care and skill of an expert, such as is commonly possessed by others in his profession.

[Ed. Note.—For other cases, see Pilots, Cent. Dig. § 18; Dec. Dig. § 15.*]

In Admiralty. Suit for collision by E. L. Whitney, as master of the barkentine Stranger, against the schooner Dora Allison and against Thomas Cook in personam. Decree for libelant against both respondents.

Hanaw & Pillans, of Mobile, Ala., for libelant.
Rickarby & Austill, of Mobile, Ala., for claimant.
Stevens, McCorvey & Dean, of Mobile, Ala., for respondent Cook.

TOULMIN, District Judge. [1] I find from the evidence in this case that the bowsprit and jibboom of the schooner Dora Allison projecting across the mouth of the slip of Hieronymus Docks, where she was moored, some 30 or 40 feet, was a menace to vessels going in and out of said slip, and that it was an obstruction to navigation—at least, very hazardous to take another vessel out of the slip under the circumstances. I find that said schooner was improperly moored, in violation of rule 1, Harbor Rules, etc., in reference to unrigging of the jibboom when at anchor or moored. I therefore consider said schoon-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er guilty of negligence which proximately contributed to the collision from which damage resulted to the barkentine Stranger.

I, however, find from the evidence that there was negligence on the part of the barkentine; that is, in the failure of the pilot to exert that needful skill required in the case in view of the locality, the attending conditions, and the special difficulties connected therewith. The pilot, Thomas Cook, was in control of the movements of the Stranger and of the tug attending the same. He was charged with the safety of the vessel, and bound to use due diligence and care and reasonable skill in the exercise of his important functions. He is answerable if the vessel suffered damage through his negligence or want of skill while she was under his control. He is chargeable for negligence if he fails in due care and skill in avoiding obstructions or difficulties known or which should have been known to him.

[2] The *highest possible* degree of skill and care was not probably required of the pilot; but he was bound to bring to the performance of the duty he assumed reasonable skill and care, and to exercise them in everything relating to the work. The skill required of a pilot is the ordinary care of an *expert* in his profession. When in charge of navigation, he supersedes the master, and is liable for negligence. "The ordinary care required of an *expert* is much higher [say the authorities] than the ordinary care required of a simple driver of a land vehicle." His liability for ordinary care means the ordinary care of an expert in his profession. While he is not liable for mere errors of judgment, he is liable for any accident that due care and attention, and the knowledge of existing conditions and circumstances, which he had, or is supposed or charged to have had, might have avoided. "A pilot is not liable for damage to the vessel in his charge unless caused by his failure to use ordinary diligence; i. e., the degree of skill commonly possessed by others in the same employment." Wilson v. Charleston Pilots' Ass'n (D. C.) 57 Fed. 227.

Pilot Cook was shown to have borne an excellent reputation for skill, caution, and care, and of long experience, yet in this instance it appears from the weight of the evidence of expert witnesses in the case that he did not exercise the needful skill and attention required under the existing conditions. He undoubtedly had the degree of skill ordinarily possessed by others of his class, but it appears that he failed to apply that knowledge and skill when required, and I am of opinion that he is liable for a part of the damages which he contributed to occasion. Cooley on Torts, 647; Mason v. Ervine (C. C.) 27 Fed. 459; Shubert v. Brown (D. C.) 45 Fed. 503; The Tom Lysle (D. C.) 48 Fed. 690–693; Wilson v. Charleston Pilots' Ass'n (D. C.) 57 Fed. 229; The Margaret, 94 U. S. 494, 24 L. Ed. 146; The Overbrook, 142 Fed. 950, 951, 74 C. C. A. 120. The expert testimony is that it was, under the conditions and circumstances, very hazardous to attempt to take the vessel out of the slip; that it was taking great risk, and, if undertaken, due care, skill, and good seamanship required that the vessel should have been held close to the wharf on the north side of the slip by lines therefrom fastened to the vessel.

My opinion is that the libelant is entitled to a decree for the dam-

ages sustained by the collision; the decree. to be for a division of the damages between the Dora Allison and Thomas Cook. Let a decree be entered accordingly. An order will be entered appointing Richard Jones as special commissioner, to whom it is referred to ascertain and report the amount of damages sustained by the barkentine Stranger.